### The Town of Marietta v. Henry Fearing.

Incorporated towns within this state can not subject stray animals, owned by persons not residents of such towns, to their corporation ordinances.

Error to the court of common pleas of Washington county.

An action of debt was commenced before the mayor of the town of Marietta, to recover a penalty for the violation of an ordinance of said town, to restrain horses from running at large. From the decision of the mayor, the defendant in error appealed to the court of common pleas. The plaintiffs in error set forth, in their declaration, their charter of incorporation, by which, among other things, it appeared that they were authorized and empowered to establish such ordinances and laws, with such penalties annexed, as to them might seem proper and necessary, for the health, safety, cleanliness, convenience, morals, and good government of said town, and the inhabitants thereof; and to cause the streets and commons of said town to be kept open and in repair, 428] and free from every kind of nuisance, and to require *and compel the abatement of all nuisances within the corporation: Provided, all such ordinances and laws should be consistent with the constitution and laws of this state and of the United States. Under these powers, the plaintiffs, on April 7, 1825, established an ordinance, by which it was declared to be unlawful for any horse to be suffered to run at large on the streets, commons, or vacant or uninclosed lots, within said town, between the 10th of April and the 1st of December of each and every year; and that if the owner or keeper of any horse, mare, etc., should suffer the same to run at large, contrary to the provisions of this ordinance,

the person or persons so offending should forfeit and pay, for the use of said town, a sum not exceeding two dollars for each offense, to be recovered before the mayor. This ordinance was duly published. The defendant, disregarding said ordinance, permitted his two mares and one colt to run at large, on the streets and commons of said town, during the time prohibited in said ordinance.

To this declaration, the defendant pleaded, that before and at the time when, etc., the defendant did not reside within the limits of the town of Marietta, but resided upon a tract of land adjoining said town, and through which tract of lands, there run a public highway, leading from said town of Marietta to the town of Belpre; and between which and the commons of said town of Marietta, there was no fence or barrier; and that at the time when, etc., the defendant turned said two mares and colt from his fields, part of said tract of land, into the said highway, whence the said mares and colt, without any other permission of the defendant, strayed upon the commons, in the declaration mentioned, and remained there without the defendant's knowledge, which is the same running at large complained of, etc.

To this plea, the plaintiffs demurred generally. The court below overruled the demurrer, and gave judgment for the defendant, to reverse which, this writ was prosecuted, and the common error assigned.

*NYE, for plaintiff in error: [429

Aggregate civil corporations are distinguished, generally, into public and private. To the last, the power of making reasonable by-laws, for the good government and benefit of the place, is, from the very nature and purpose of their being, incident. 4 Wheat. 668; 1 Salk. 142; 2 Bac. Ab. 8; 1 Bac. Ab. 545, 546, 550; 1 Cowp. 270.

It has been said, by high authority, that the whole government of the country is a series of corporations. Hence, it is said that a by-law may be *præter* the general law, though not *contra*. 1 Bac. Ab. 651.

As civil communities, for political purposes, there are attached, in a qualified degree, to public corporations, the rights of domain and security, and those which flow from them. These rights and immunities, whether ample or limited, are, in this respect, perfect;

and are no more legally exposed to infraction, with impunity, by strangers than citizens. 2 Vattel, ch. 4, sec. 49.

Strangers coming into a corporation must, at their peril, take notice of the by-laws of such corporation. 1 Bac. Ab. 550; Skin. 350, pl. 19; Lutw. 404.

It is not necessary to set forth in a by-law, the reasons for its enactment. Carth. 482; 1 Bac. Ab. 545; 3 Burr. 1838.

The defendant was bound to take notice of the law of the corporation, and having knowingly and voluntarily permitted his horses to run and remain at large within its jurisdiction, he is liable to the penalty inflicted by that law.

H. STANBERY submitted an argument on the other side.

GODDARD, contra:

The question of law supposed to be raised by the plaintiff's demurrer, to the defendant's *amended* pleas, is this:

Has the corporation of the town of Marietta power to fine a stranger, owning lands contiguous to said town, whose horse, lawfully grazing on his own land, strays into said town; between which and the land of said stranger, there is no barrier? This is 430] the substance of this dispute. If stated *too narrowly, a recurrence to the plea will correct this error.

The defense to this action is founded mainly on section 12 of the act relating to stray animals. Vol. xxii. 359. I think it will be conceded that this statute would effectually prevent the town of Marietta from *taking up* Paul Fearing's old mare (who has run on these commons from the time whereof man's memory runnneth not), except as a stray, and in the manner pointed out by the stray act. Indeed, such was the decision of this court in the case of David Putnam's sheep, which induced the town of Marietta so to alter that law, as to take away its operation *in rem*, and seek to enforce it in *personam*. I claim that their present ordinance is repugnant to the spirit of our public statutes.

It is proper here to inquire into the true intent and meaning, reason and spirit, of section 12 of the stray act, and of the "act defining a lawful fence," etc.—p. 240. The common law doctrine upon the subject of a close, surrounded by an ideal, invisible fence, leads to consequences wholl y irreconcilable with the use and enjoyment of real estate, in a new, sparsely settled country. Take

this case for illustration. It has been decided that the owner of land over which a road runs may maintain an action of trespass against his neighbor, whose cow grazes by the side of the road. Adhere to the common law doctrine, and this court must decide that hogs eating mast in the woods subject their owner to an action, or to a thousand actions, in favor of the owner of the soil, an injury not remedied by section 58 of the judiciary act, relative to tender of awards. The provisions of the two first statutes to which I have called the attention of the court, are intended to modify the common law in this respect.

I hold that the " act defining a lawful fence," etc., provides, in effect, what shall be a close ; and that no action will lie, for an injury done to land by the animals there named, unless the land be inclosed by the kind of fence there defined to be " lawful." This act, by implication, proclaims it to be lawful for the animals of A. to graze on the land of B., which is *in fact* uninclosed.

Some further legislation was, however, thought necessary. The legislature were in the habit of incorporating \*towns, giving [431 them extensive powers ; and it was desirable that those powers should not be so construed as to interfere with the sound principles of public policy, which the legislature had adopted. They had already, as I have argued, pronounced it lawful for a man's animals to graze on another's uninclosed land. While doing so, they might stray into a corporate town ; and it was necessary, in pursuance of the same policy, to guard the owner from the vexatious operation of town ordinances. Section 12 of the stray act was intended to effect this object ; and when we have learned the intention of the law-maker, we have that, rather than the words, to guide us. This section, it is true, in terms only, prohibits towns from " taking up and dealing with " animals ; but is any one so blind as not to see, that enforcing a penalty against the owner of the animal is the same thing? I only ask for the application of the common rules laid down for the construction of statutes.

By the COURT :

It is a general rule of law, that strangers, as well as citizens, are bound by the ordinances and by-laws of a corporation. Strangers visiting a country are bound by the laws of its sovereign. 1 Vattel, ch. 4, sec. 49. Strangers coming into a corporation must, at their peril, take notice of the by-laws of such cor-

poration. 1 Bac. Ab. 550; 1 Cow. 269. A by-law of a city is binding upon strangers coming within the territorial limits of the city. 6 Pick. 187. These principles prevail in all well-organized governments, and the experience of ages has proved their practical utility.

But do these principles apply to the present case? The statute concerning stray animals, vol. xxii. 343, after pointing out the mode in which animals running at large may be taken up and disposed of, provides, " that nothing in the act for the incorporation of towns, and nothing in any special act for the incorporation of any town or village in this state, shall be so construed as to authorize the making of any by-laws or ordinances, or to enforce' the same, of any such town or village, which shall subject any animals, the property of any person not residing within the limits of such town or village, *to be taken up and dealt with in any other manner than is provided for in this act." We consider this a decisive expression of the legislative will upon this subject; and it was intended to subject non-resident owners of animals to no further liabilities for strays than those imposed by the act. It removes no difficulty to say, that the ordinance of the town of Marietta operates, not on the animals, but on the owner, in the shape of a penalty. It infringes the spirit of the law, and is repugnant to its policy. That can not be done indirectly which the law prohibits to be done directly. An ordinance of an inferior corporation, in violation of a public statute, is necessarily void.

But this statute was passed after the town of Marietta was incorporated, and it is to be inquired, whether it is competent for the legislature to modify or restrict its charter without its consent. In this respect there seems to be a well-settled distinction between private and public corporations. In the case of Dartmouth College v. Woodward, 4 Wheat. 518, the Supreme Court of the United States held, that a private corporation is a contract between the government and the corporation, and the legislature can not repeal, impair, or alter the rights and privileges conferred by the charter, against the consent, and without the default of the corporation, judicially ascertained and declared. But a public corporation, created for the purposes of government, can not be considered as a contract. We adopt the rule laid down by the late Chancellor Kent upon this subject. 2 Kent's Com. 245. " In respect to public corporations, which exist only for public purposes,

as counties, cities, and towns, the legislature, under proper limita-
tions, have a right to change, modify, enlarge, or restrain them,
securing, however, the property, for the uses of those for whom it
was purchased."

Upon the whole, we are of opinion that the legislature reserved
the power to prohibit corporations from interfering with animals
running at large, where the owners are non-residents ot the cor-
poration; and that this power was virtually exercised by the
passage of the statute.

Demurrer overruled.